UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERNEST LEE COX, Jr.,

Plaintiff,

v.

JOHN KRPIN, et al.,

Defendants.

No. 2:18-cv-02523 TLN DB P

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant was deliberately indifferent to his serious medical needs. Before the court is defendant's motion for summary judgment (ECF No. 45) and plaintiff's cross-motion for summary judgment (ECF No. 49.) For the reasons set forth below, the court will recommend defendant's motion for summary judgment be granted and plaintiff's cross-motion for summary judgment be denied. The court will also deny defendant's request for extension of time (ECF No. 52) as moot and deny plaintiff's motion for appointment of counsel (ECF No. 54).

////

////

////

////

## BACKGROUND

### I. Procedural History

The present action was initiated by the plaintiff on September 17, 2018. (ECF No. 1.) After the complaint was screened by the court, plaintiff decided to proceed solely on his claim of deliberate indifference against defendant, John Krpan, M.D.[1] (ECF No. 13.) Plaintiff voluntarily dismissed all other defendants and claims from the initial complaint. (Id.) Following service, defendant filed a motion to dismiss. (ECF No. 29.) This motion was granted in part and denied in part. (ECF Nos. 32, 33.) Plaintiff's claims regarding his CPAP machine were dismissed but he was permitted to proceed on his other claims as stated in the screened complaint. (Id.) Defendant filed an answer to the complaint on May 27, 2021, and a discovery and scheduling order was issued. (ECF Nos. 39, 40.)

Following discovery, defendant filed the present motion for summary judgment on December 16, 2021. (ECF No. 45.) On January 21, 2022, plaintiff filed an opposition to defendant's motion for summary judgment and a cross-motion for summary judgment. (ECF No. 49.) Defendant filed an opposition to the cross-motion for summary judgment and a reply to plaintiff's opposition on March 4, 2022. (ECF No. 53.) Plaintiff filed a reply to the defendant's opposition on March 28, 2022. (ECF No. 54.)

### II. Factual Allegations in the Complaint

Plaintiff claims that defendant Krpan violated plaintiff's Eighth Amendment rights through deliberate indifference to his serious medical needs. Plaintiff alleges that he is a documented sleepwalker in addition to suffering from osteoarthritis and degenerative disc disease. (ECF No. 1 at 4-5.) Plaintiff states that he was originally granted a "lower bunk chrono" which directed plaintiff to receive a lower bunk assignment between 2007 and 2013 and again between 2014 and 2017. (Id. at 5-7.) Plaintiff claims that his lower bunk chrono was revoked in

////

[1] As noted in the court's prior orders, defendant's filings indicate his last name is "Krpan" despite the spelling used in the case caption. (See e.g., ECF No. 32 at 2.) The spelling "Krpan" will be used for the defendant for the remainder of these findings and recommendations.

2017 by defendant Krpan despite defendant having not met the plaintiff and not reviewing plaintiff's file prior to revoking the chrono. (Id. at 8-9.)

In the complaint, plaintiff states that as a result of these events, he was placed in an upper bunk assignment which caused him pain due to his degenerative disk disease as well as fear of injury due to his sleepwalking. (Id. at 9-10.) Plaintiff claims this also causes him stress and anxiety. (Id. at 10.)

## MOTION FOR SUMMARY JUDGMENT

### I. Parties' Cross Motions for Summary Judgment

Defendant seeks summary judgment on the grounds that plaintiff has presented no evidence to support that defendant Krpan was responsible for rescinding plaintiff's lower bunk accommodation. (ECF No. 45-1 at 2.) Plaintiff argues for summary judgment on the basis that defendant Krpan rescinded plaintiff's lower bunk chrono, not plaintiff's previous primary care doctor, and that defendant acted with deliberate indifference in doing so. (ECF No. 49 at 8.) Defendant additionally claims that Dr. Ashe's actions upon returning from maternity leave "amounts to punishing plaintiff for the grievance in support of Dr. Krpan." (Id. at 17.)

### II. Legal Standards

#### A. Summary Judgment under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71

**III. Undisputed Facts**

In 2017, plaintiff's primary care physician was Dr. Ashe was plaintiff's primary care physician ("PCP") until she went on maternity leave. (DSUF (ECF No. 45-2) #5; DSUF Response (ECF No. 49 at 7-10) #5.) Dr. Ashe went on maternity leave on November 13, 2017.

(DSUF #6.) Defendant Cox served as plaintiff's PCP while Dr. Ashe was on maternity leave. (DSUF #8; DSUF Response #9.) Plaintiff's lower bunk accommodation was revoked on October 12, 2017. (DSUF #3; Compl. (ECF No. 1) at 8, ¶ 25.) After discovering his lower bunk accommodation was no longer active, plaintiff submitted a grievance regarding the lower bunk chrono revocation. (DSUF #13; DSUF Response #13.)

Parties raise a number of other factual claims which are purportedly disputed. However, many of these facts are not material. Where they are material, the court will address if there exists sufficient evidence to establish a genuine dispute of fact.

## IV. Discussion

### A. Claims Regarding Dr. Ashe Raised in Opposition and Cross-Motion for Summary Judgment

At the outset, the court notes that plaintiff includes in his opposition to summary judgment and cross-motion for summary judgment an argument regarding Dr. Ashe's actions upon returning from maternity leave. (ECF No. 49 at 17-18.) Plaintiff's claim appears to be that Dr. Ashe retaliated against plaintiff in response to grievances he filed. (Id.) Dr. Ashe is not a party to this action and plaintiff's complaint was not screened to include a claim of retaliation by defendant or Dr. Ashe. (See ECF Nos. 1, 10.) Plaintiff elected to proceed only on his deliberate indifference claim against defendant Krpan and voluntarily dismissed all other claims and defendants. (ECF No. 13.) This appears to be a new claim against a new defendant and cannot properly be brought at this stage of these proceedings. As such, it is recommended that summary judgment on this ground should be denied.

### B. Eighth Amendment - Deliberate Indifference to Medical Need

#### 1. Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy

and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

////

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**2. Analysis**

**i. Defendant's Motion for Summary Judgment**

Defendant's main contention is that he cannot be found deliberately indifferent for the revocation of plaintiff's lower bunk accommodation as defendant was not involved at all in that action. (ECF No. 45-1 at 6.) Defendant claims that plaintiff cannot present any evidence that

defendant revoked plaintiff's lower bunk chrono as it was non-party Dr. Ashe, not defendant, who revoked the chrono. (Id.)

Defendant, as the party moving for summary judgment, must first meet an initial responsibility to prove there is an absence of evidence to support the non-moving party's case. In re Oracle Corp. Sec. Litig., 627 F.3d at 387. Defendant has presented the document recording the revocation plaintiff's lower bunk accommodation. (Def. Ex. E (ECF No. 45-3) at 92.) That document indicates that staff member "Ashe Marianna" removed the notation for "Lower/Bottom Bunk Only" from plaintiff's file on October 12, 2017. (Id.) Defendant's name does not appear anywhere on this document nor does the document suggest that anyone else was involved in revoking the accommodation. (Id.) Defendant also presents evidentiary support to show that Dr. Ashe did not go on maternity leave until November 13, 2017, after plaintiff's lower bunk accommodation was revoked. (Def. Ex. J (ECF No. 45-3) at 171.) Defendant argues that plaintiff has presented no evidence showing that defendant revoked the lower bunk chrono. (Id. at 5-6.)

With the above facts and evidence, defendant has shown that there is an absence of evidence that defendant revoked the lower bunk chrono and even presented evidence supporting that he was not involved. Thus defendant, as the moving party, to meet its initial responsibility. In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

**ii. Plaintiff's Opposition and Cross-Motion for Summary Judgment**

The burden must shift to plaintiff to establish the existence of a genuine factual dispute. Matsushita Elec. Indus. Co., 475 U.S. at 586-87. In response to defendant's motion, plaintiff argues that the records presented by defendant only show that Dr. Ashe "made a correction from Lower/Botton [sic] Bunk only to Bottom Bunk Only." (ECF No. 49 at 15.) Plaintiff claims that Dr. Ashe was correcting a typographical error in making this change. (Id.) However, plaintiff does not present any evidence showing that this was in fact a correction. Plaintiff only provides documents purportedly showing that Dr. Ashe had previously made typographical errors on a few occasions. (Id.) Further, nothing on the chrono revocation mentions replacing "Lower/Bottom Bunk only" with "Bottom Bunk Only" as plaintiff claims. (See Def. Exhibit E.) Instead, it only

states that "Lower Bottom Bunk only" is to be removed. (Id.) Plaintiff's bare assertions are not enough to show that there is a genuine dispute regarding these facts. See Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 248.

Plaintiff also argues that this document did not revoke the chrono as, if it were a revocation, it would have removed the chrono from the list of medical classification chronos included in plaintiff's exhibits. (ECF No. 49 at 16; Pl. Ex. H (ECF No. 49) at 99.) Plaintiff presents no evidence besides his own assertion that an accommodation revocation would remove that accommodation from the list of chronos. In fact, this list, which states it was generated on June 16, 2020, still shows chronos that had expired at the time the list was generated. (Pl. Ex. H at 99-111.) Additionally, the list still contains the August 29, 2017 lower bunk chrono. (Pl. Ex. H at 104.) Plaintiff's suit alleges that this chrono was revoked by defendant. (ECF No. 49 at 11.) If revocation of a chrono removed an accommodation from this list, this document would not appear regardless of whether it was Dr. Ashe or defendant who revoked it. Thus, this argument is not persuasive and amounts to pure speculation. As such, it is insufficient to show there exists a genuine dispute. See Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 248.

Finally, plaintiff presents no evidence showing that Dr. Ashe was not his primary care physician at the time of the revocation. Defendant has provided declarations supporting that Dr. Ashe went on leave on November 13, 2017 (Def Ex. J at 171) and the parties agree that Dr. Ashe was plaintiff's PCP until she went on leave (DSUF #5; ECF No. 49 at 8). That plaintiff does not know when Dr. Ashe went on leave does not establish a genuine dispute of fact. See Fed. R. Civ. P. 56(c)

Defendant argues that there is an absence of evidence to support the claim that defendant was responsible for harming the plaintiff. (ECF No. 45-1 at 4.) Plaintiff presents no evidence that defendant was responsible for revoking the lower bunk chrono. As such, plaintiff has failed to meet his burden in response to the evidence presented by defendant above. Matsushita Elec. Indus. Co., 475 U.S. at 586-87. Accordingly, plaintiff has not established the existence of a genuine dispute of fact. Anderson, 477 U.S. at 248.

////

**iii. Additional Arguments in Parties' Replies**

The parties' replies largely retread the same arguments discussed above. These filings also provide argument by the parties regarding plaintiff's claim that defendant was interviewed in connection with a grievance filed by the plaintiff. (ECF No. 53 at 7; ECF No. 54 at 2.) Plaintiff briefly alleges that defendant Krpan was interviewed by RN M. Martinez and cites two exhibits attached to the opposition. (ECF No. 49 at 12.) However, none of the documents in these exhibits contain a mention of an interview with defendant Krpan. (See ECF No. 49 at 31-45.) Plaintiff suggests that the reference within one document that plaintiff's PCP ordered an x-ray on March 13, 2018 is a reference to defendant. (ECF No. 49 at 12.) Defendant has provided clear evidence, in the form of Dr. Ashe's notes from that appointment, that it was Dr. Ashe who met with plaintiff on March 13, 2018, not defendant. (Def. Ex. G (ECF No. 45-3) at 106-07.)

Regardless, it does not appear that this fact is even material. This interview occurred after plaintiff's lower bed chrono was already revoked. As such, it does not appear to be relevant to plaintiff's claim that defendant was responsible for revoking plaintiff's lower bed chrono and is not material. Anderson, 477 U.S. at 248; T.W. Elec. Serv., Inc., 809 F.2d at 630.

Finally, parties discuss plaintiff's assertion that he spoke with a nurse who informed him that defendant was responsible for revoking the chrono. (See ECF No. 53 at 2; ECF No. 54 at 4.) However, plaintiff has not provided a name or otherwise identified this nurse, let alone provided a declaration, deposition testimony, or other evidentiary support.[2] Even if this is not inadmissible hearsay, plaintiff's unsupported statement that he was told defendant revoked his lower bunk accommodation is essentially a bare assertion. By comparison, defendant has presented documentary evidence supporting his contention that he was not involved. (See Def. Ex. E at 92.) This claim is not enough to show that there is a genuine dispute regarding these facts. See Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 248.

---

[2] Plaintiff seems to suggest that he is unable to identify the nurse who told him that defendant revoked his chrono without assistance of counsel. (ECF No. 54 at 4.) However, plaintiff provides absolutely no support for this assertion. As such, there is no reason for the court to find that plaintiff would be unable to determine the identity of this individual without assistance of counsel.

**iv. Deliberate Indifference**

As stated above, plaintiff fails to raise genuine issue of material fact regarding defendant's actions. For defendant to have acted with deliberate indifference to plaintiff's medical need, that defendant must have undertaken "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

Plaintiff has failed to show that defendant had any involvement in the revocation of plaintiff's lower bunk chrono. As such, plaintiff has failed to put forth evidence from which a reasonable jury could find that defendant committed any act or omission of deliberate indifference by the defendant. Id.; Benge v. Ryan, 154 F.Supp.3d 857, 880 (D. Ariz. Jan. 5, 2016) (summary judgment for defendant appropriate where defendant showed unrefuted evidence she was uninvolved in the medical care in question and plaintiff failed to present documentary evidence to the contrary); Stevens v. Jungen, 2014 WL 910390, *8-9 (D. Ariz. Mar. 6, 2014) (summary judgment granted where defendant presented evidence that they were uninvolved in the medical care in question and plaintiff only offered conclusory allegations in response).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. Plaintiff has failed to show that defendant's act or omission was responsible for the violation of his Eighth Amendment rights. Accordingly, it will be recommended that defendant's motion for summary judgment be granted and plaintiff's motion for summary judgment denied.[3]

## MOTION FOR APPOINTMENT OF COUNSEL

Though plaintiff has not expressly brought a motion to appoint counsel before the court, plaintiff's reply to defendant's opposition includes what appears to be a request that the court appoint counsel for the plaintiff. (ECF No. 54 at 4-6.)

The United States Supreme Court has ruled that district courts lack the authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490

[3] Defendant also argues that he is entitled to qualified immunity. (ECF No. 45-1 at 6-8.) As the court finds that defendant did not violate plaintiff's Eighth Amendment rights, the court need not address the question of qualified immunity. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

U.S. 296, 298 (1989). In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel.

In the present case, the court does not find the required exceptional circumstances. Plaintiff's claims do not appear to involve particularly complex legal issues and he has thus far succeeded in litigating action all the way to the summary judgment stage. Additionally, the court will recommend that defendant's motion for summary judgment be granted and thus plaintiff has no likelihood of success on the merits. Plaintiff has not shown that his case presents exceptional circumstances and only broadly claims that certain tasks cannot be completed unless counsel is appointed. (ECF No. 54 at 4-5.) Plaintiff includes no explanation or support for the claims that he is unable to do these actions without counsel.

Given these facts, the court will not find that exceptional circumstances exist and will deny plaintiff's request for counsel.

**MOTION FOR EXTENSION OF TIME**

Defendant previously filed a request for extension of time to file a reply to plaintiff's opposition to the motion for summary judgment. (ECF No. 52.) However, defendant has since filed a reply to the motion for summary judgment. (ECF No. 53.) As such, the motion for extension of time (ECF No. 52) will be denied as moot.

////

////

////

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendant's motion for extension of time (ECF No. 52) is denied as moot.
2. Plaintiff's motion for the appointment of counsel (ECF No. 54) is denied.

Further, IT IS RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 45) be granted.
2. Plaintiff's cross-motion for summary judgment (ECF No. 49) be denied.
3. Judgment be entered for defendant John Krpan.
4. This action be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 4, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:14
DB/DB Prisoner Inbox/Civil Rights/R/cox2523.msj_fr